**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ROGER HAUTH #307983<br>Plaintiff<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC., et al.<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>) | **Case No.: 16-cv-01541-DKC** |

## MEMORANDUM OF LAW

Defendants Wexford Health Sources, Inc., John Moss, PA, Emmanuel Esianor, PA, Matthew Carpenter, PA, Priscilla Momoh, PA, Titilayo Otunuga, PA, Oladipo Olaleye, PA, Mary Rockefeller, PA, Zowie Barnes, MD, Bolaji Onabajo, MD, Darryl Hill, MD, Gatachew Tefferra, MD, Kimberly Carter, R.N., Millicent Jenkins, R.N., and Bernard Alenda, PA's (collectively, the "Wexford Defendants"), by their undersigned counsel, Joseph B. Chazen, Gina M. Smith and Meyers, Rodbell & Rosenbaum, P.A., hereby submit the following Memorandum of Law in support of their Motion to Dismiss or, in the alternative, Motion for Summary Judgment.

## I. INTRODUCTION

On May 19, 2016, Plaintiff Roger Hauth ("Plaintiff"), a *pro se* litigant and at all times relevant to the Complaint an inmate at the North Branch Correctional Institution ("NBCI"), filed a Complaint assigned Case No. 16-1541 in the United States District Court of Maryland alleging deliberate indifference to his medical needs resulting in a violation of his constitutional rights.

Plaintiff alleges the Wexford Defendants failed to give him proper medical care.

Plaintiff apparently seeks injunctive relief for "reasonably adequate" medical care for his: sinuses, hearing aid, and surgery; and unspecified monetary compensation for permanent

damages to sinuses and ears, pain, suffering, stress, and stomach problems. Plaintiff also seeks psychological treatment and a single cell. ECF No. 1.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff is a 50 year old male with a medical history significant for anxiety disorder, depressive disorder and ear problems. See Exhibit 1. Plaintiff's pertinent encounters with his health care providers related to his allegations are detailed below.

On January 7, 2015, Plaintiff was seen by Carl Oltman, P.A, at provider sick call. See Exhibit 1 at 2-3. Plaintiff complained of an earache in the right ear. Plaintiff had a recent upper respiratory infection. Id. Plaintiff denied any aggravating or relieving factors. Id. Plaintiff's symptoms included clear drainage, fullness/pressure, ear popping, purulent drainage, redness/swelling in the outer ear, ringing/buzzing in the ear and decreased hearing. Id. Pertinent negatives were bleeding from the ear, decreased appetite and congestion. Id. It was noted Plaintiff had a history of otitis media perforation. Id. Plaintiff was prescribed Cipro,[1] motrin and Aprodine.[2] Id. Plaintiff was referred to a provider for follow up. Id.

On January 27, 2015, Plaintiff was seen by Carl Oltman, P.A. at provider sick call. See Exhibit 1 at 2. Plaintiff was seen for his ear discomfort. Id. It was noted Plaintiff's earache was resistant to his current antibiotics, which would be changed. Id. Plaintiff was prescribed Claritin,[3] Excedrin Migraine,[4] and Keflex.[5] Id.

---

[1] Ciprofloxacin is a synthetic antibiotic in the fluoroquinolone class effective against many gram positive/ negative bacteria. See http://www.drugs.com/pro/cipro-iv.html#indications.

[2] Aprodine is a combination of pseudoephedrine and triprolidine used to treat runny or stuffy nose, sneezing, itching, watery eyes, and sinus congestion caused by allergies, the common cold or the flu. Triprolidine is an antihistamine that reduces the effects of natural chemical histamine in the body. Histamine can produce symptoms of sneezing, itching, watery eyes, and runny nose. Pseudoephedrine is a decongestant that shrinks blood vessels in the nasal passages. Dilated blood vessels can cause nasal congestion. See http://www.drugs.com/mtm/aprodine.html.

[3] Claritin (loratadine) is an antihistamine that reduces the effects of natural chemical histamine in the body. Histamine can produce symptoms of sneezing, itching, watery eyes, and runny nose. See

On March 12, 2015, Plaintiff was seen by Emmanuel Esianor, P.A. at provider sick call. See Exhibit 1 at 6-7. Plaintiff continued to complain of ear discomfort. Id. Plaintiff stated the pain was behind the ear. Id. Plaintiff denied discharge and headache. Id. Plaintiff's Claritin and Keflex were renewed. Id. Plaintiff was prescribed Ibuprofen[6] 600mg, 1 tablet twice daily. Id.

On April 14, 2015, Plaintiff was seen by Tsedale Gebre, R.N. at sick call. See Exhibit 1 at 8. Plaintiff continued to complain of an earache. Id. Plaintiff complained of fluid in the ear that caused pressure in his ears and headaches. Id. Plaintiff complained of popping and cracking that interfered with hearing. Id. Plaintiff complained of a yellow nasal discharge, sometimes with blood in the discharge. Id. Plaintiff was noted to have a history of otitis media,[7] backache, seborrheic dermatitis[8] and dental caries.[9] All Plaintiff's medications had expired. Id. Plaintiff's examination revealed no ataxia[10] while walking a straight line, a Romberg test[11] was normal, and the outer ear canal[12] and tympanic membranes were normal. Id. Plaintiff was evaluated as possibly having positional vertigo, a trial of Antivert[13] was suggested.

---

https://www.drugs.com/claritin.html.

[4] Excedrin Migraine is a combination of acetaminophen, aspirin, and caffeine. Acetaminophen is a pain reliever and a fever reducer. Aspirin is in a group of drugs called salicylates. It works by reducing substances in the body that cause pain, fever, and inflammation. Caffeine is a central nervous system stimulant. It relaxes muscle contractions in blood vessels to improve blood flow. Acetaminophen, aspirin, and caffeine is a combination medicine used to treat pain caused by tension headaches, migraine headaches, muscle aches, menstrual cramps, arthritis, toothaches, the common cold, or nasal congestion. See https://www.drugs.com/mtm/excedrin-migraine.html.

[5] Keflex (cephalexin) is a cephalosporin antibiotic used in the treatment of infections of respiratory tract, urinary tract, skin and skin structures, and bone; treatment of otitis media caused by susceptible strains of specific microorganisms. See http://www.drugs.com/ppa/cephalexin.html.

[6] Ibuprofen is a nonsteroidal anti-inflammatory drug (NSAID). It works by reducing hormones that cause inflammation and pain in the body. See http://www.drugs.com/ibuprofen.html.

[7] Inflammation of the middle ear. Taber's Cyclopedic Medical Dictionary, 3rd Series, 16th Ed., p. 1284.

[8] Acute or subacute skin disease of unknown etiology. Id. p. 481.

[9] Decay and disintegration of soft or bony tissue or a tooth. Id. p. 296.

[10] Ataxia is typically defined as the presence of abnormal, uncoordinated movements due to neurapathy. See http://www.hopkinsmedicine.org/neurology_neurosurgery/centers_clinics/movement_disorders/ataxia/conditions/.

[11] The Romberg Test is a neurological test to detect poor balance. Specifically, it detects the inability to maintain a steady standing posture with the eyes closed. See http://www.mult-sclerosis.org/RombergTest.html.

[12] While written EOC, given the subject matter that acronym must certainly be an error intended as OEC.

[13] Antivert (meclizine) is an antihistamine that reduces the effects of natural chemical histamine in the body. Antivert is used to treat or prevent nausea, vomiting, and dizziness caused by motion sickness. See

On May 1, 2015, Plaintiff was seen by Emmanuel Esianor, P.A. at provider sick call. See Exhibit 1 at 9-10. Plaintiff continued to complain of ear discomfort and was referred to the chronic care physician. Id.

On May 14, 2015, Plaintiff was seen by Bolaji Onabajo, M.D. at chronic care clinic. See Exhibit 1 at 11-13. Plaintiff reported he had had four months of pain in his right ear, with positional dizziness and associated nausea, palpitations at times and headache. Id. Plaintiff reported that after a tooth extraction he developed a perforation in the roof of his mouth and food comes out his nostrils. Id. Plaintiff was given antibiotics, Antivert and Motrin. Id. Plaintiff's physical examination revealed him to be in no acute distress, his right ear exam was unremarkable but his left had mastoid cavity granulation[14] and cholesteatomatous[15] debris. Id. Plaintiff was referred to an ENT specialist at Bons Secours Hospital. Id.; see also Exhibit 1 at 14.

On June 11, 2015, Plaintiff was seen by Emmanuel Esianor, P.A. at provider sick call. See Exhibit 1 at15-16. Plaintiff was requesting refills of his chronic care medications. Id. Plaintiff's record indicated that Plaintiff had adequate refills. Id. Plaintiff also indicated that his chronic care physician said his antibiotic was to be changed but no such order was in his medical record. Id. Plaintiff was referred to the chronic care physician. Id.

On, June 25, 2015, Plaintiff was seen by Emmanuel Esianor, P.A. at provider sick call. See Exhibit 1 at 17-18. Plaintiff was complaining of his continuing ear discomfort. Id. Plaintiff was advised he was being referred to a physician at chronic care clinic. Id.

On July 6, 2015, Plaintiff was seen by Bolaji Onabajo, M.D. at chronic care clinic. See

---

https://www.drugs.com/antivert.html.

[14]Fleshy projections forming on the surface of a wound. Taber's Cyclopedic Medical Dictionary, 3rd Series, 16th Ed., p. 759.

[15] Cholesteatomas are cysts or sacs of keratinising squamous epithelium found in the middle ear cleft.

Exhibit 1 at 19-22. Plaintiff was complaining of his continuing ear discomfort. Id. Plaintiff's examination revealed he was in no acute distress; his right ear had minimal purulent discharge. Id. Plaintiff was prescribed Ciprodex[16] and Augmentin,[17] and his Cipro was renewed. Id.

On July 10, 2015, Plaintiff was seen by Joan Bailey, R.N. at nurse sick call. See Exhibit 1 at 23. Plaintiff was complaining that his medication prescribed by Dr. Onabajo was not available. Id. The nurse contacted the pharmacy and determined the medication had not been provided. Id. The nurse sent a facsimile request for the medication that same day. Id.

On July 14, 2015, Plaintiff was seen at Bon Secours Hospital by Anwar Mumtaz, an ENT specialist. See Exhibit 1 at 24-25. Plaintiff was diagnosed with dysfunction of the right Eustachian tube, unspecified sinusitis (chronic), a deviated nasal septum, right hearing loss, and unspecified otalgia.[18] Id. Plaintiff was advised to follow up in four weeks after a hearing test and CAT scan of the sinuses. Id.

On July 16, 2015, Plaintiff was seen by Emmanuel Esianor, P.A. for a post offsite follow up. See Exhibit 1 at 26. The recommendation for a hearing test and CAT scan of the sinuses was noted. Id. Flonase[19] was added to Plaintiff's prescriptions. Id.

On July 21, 2015, Zowie Barnes, M.D. updated Plaintiff's medical chart. See Exhibit 1 at 27. Consults for Plaintiff's ENT follow up, hearing test and CT sinus scan were submitted. Exhibit 1 at 28-30.

On August 17, 2015, Plaintiff was seen at Bon Secours Hospital for a CT sinus scan. See Exhibit 1 at 31-34. The findings were:

---

[16] Ciprodex ear drops contain ciprofloxacin and dexamethasone. Ciprofloxacin is an antibiotic that treats infections caused by bacteria. Dexamethasone is a steroid. It reduces the actions of chemicals in the body that cause inflammation. See https://www.drugs.com/ciprodex.html.

[17] Augmentin is a penicillin antibiotic. See https://www.drugs.com/augmentin.html.

[18] Earache. Taber's Cyclopedic Medical Dictionary, 3rd Series, 16th Ed., p. 1283.

[19] Flonase is a nasal spray containing fluticasone. Fluticasone is corticosteroid that prevents the release of substances in the body that cause inflammation.

no facial fracture or other osseous abnormality. The alveolar ridges [gums], particularly the maxillary ridges were markedly atrophic with multiple missing teeth. There was no distinct evidence of a distinct defect into the maxillary sinuses [the gum atrophy had no affect on the maxillary sinuses]. There was atrophy of the alveolar ages of the mandible as well with several missing teeth. The temporomandibular joints were symmetrical. The visualized paranasal sinuses showed minimal mucosal thickening in frontal and ethmoid sinuses with other sinuses clear [there was minimal evidence of chronic inflammation]. Maxillary ostia were patent [open]. Mastoid air cells and temporal bone structures are unremarkable. The globes, optic nerves and extraocular muscles were normal. No abnormalities were identified with in the visualized portions of the brain or nasopharynx. Id. The impression was chronic dental disease with multiple missing teeth. There was no evidence of sinus disease. Temporal bone structures were unremarkable. Id.

On August 17, 2015, Plaintiff was seen by Emmanuel Esinaor, P.A. for a post off site follow up. See Exhibit 1 at 35. Plaintiff's current medications were continued and Plaintiff was cleared to return to his housing unit. Id.

On August 27, 2015, Plaintiff was seen by Bernard Alenda, N.P. at provider sick call. See Exhibit 1 at 36-37. Plaintiff wanted his medications renewed. Id. Plaintiff had nasal congestion and a cough. Id. Plaintiff reported the cough produced thick yellow sputum, he had sweats by morning but no fever. Id. Plaintiff's medications were renewed and Plaintiff was prescribed Robitussin Cough & Cold liquid. Id.

On October 14, 2015, Plaintiff was seen by Joan Bailey, R.N. at the dispensary. See Exhibit 1 at 38. Plaintiff was complaining of thick yellow nasal discharge and constant nasal stuffiness and ear pain. Id. There was no pain or tenderness on palpation of sinuses, Plaintiff was able to sniff through each nostril as the other was occluded. Id. Plaintiff was referred to a mid-level provider. Id.

On October 18, 2015, Plaintiff was a no show for his chronic care appointment. Exhibit 1 at 39.

On October 27, 2015, Plaintiff was seen by Bolaji Onabajo, M.D. for his right ear discomfort. Exhibit 1 at 40-42. It was noted Plaintiff's hearing test and follow up at Bon

Secours ENT had not been done. Id. Plaintiff's Motrin and Antivert were renewed and a consult was placed with audiology for a hearing test. Id. Exhibit 1 at 43.

On November 18, 2015, Plaintiff was seen by Zowie Barnes, M.D. at a provider visit. Exhibit 1 at 44. Plaintiff's case was discussed and consults were resubmitted for audiology and an ENT follow up. Id.

On January 13, 2016, Plaintiff underwent a hearing test. Exhibit 1 at 45. Plaintiff was determined to have a severe mixed loss in the right ear and a slight sensorineural loss in the left ear. Tympanometry indicated reduced compliance in the right ear and hyper compliance in the left. Plaintiff was recommended to a ENT specialist for follow up. Id.

On January 26, 2016, Plaintiff was seen by Mary Rockefeller, N.P. at provider sick call. Exhibit 1 at 46-47. Plaintiff was complaining of sinus discomfort in the right nostril which was congested, with occasional discharge, and right ear discomfort. Id. Plaintiff wanted to see his chronic care physician. Id. Plaintiff also complained of right knee pain. Id. Plaintiff was referred to the chronic care clinic. Id. Plaintiff's Aprodine and Ibuprofen were renewed. Plaintiff was prescribed Debrox.[20] Id.

On February 1, 2016, Plaintiff was seen at Mercy Hospital by Ileana Showalter, M.D., a specialist in Otolaryngology. Exhibit 1 at 48-52. Plaintiff's ENT examination revealed his external auditory canals were normal and the tympanic membranes were normal, his right tympanic membrane was mobile. Plaintiff's Weber[21] test was at midline at 512Hz. Id. Plaintiff's left and right Rinne[22] tests revealed air conduction was greater than bone conduction. Id.

---

[20] Debrox solution is used for softening, loosening, and removing excessive earwax. Debrox solution is a form of peroxide.

[21] Test for unilateral deafness. A vibrating tuning fork held at midline of the top of the head will be perceived at midline by those with equal hearing ability in both ears. Taber's Cyclopedic Medical Dictionary, 3rd Series, 16th Ed., p. 2016.

[22] The Rinne test involves use of a tuning fork to compare bone and air conduction. Taber's Cyclopedic Medical Dictionary, 3rd Series, 16th Ed., p. 1612.

Plaintiff's nasal mucosa was clear, his oral mucosa and posterior pharynx were clear. Id. Plaintiff's exam was otherwise unremarkable. Id. Plaintiff was recommended clarithromycin,[23] fluticasone[24] nasal spray, and saline nasal spray. Id. Plaintiff was recommended for a nasal endoscopy and to bring his CT sinus scan and hearing test results on his follow up. Id.

On February 1, 2016, Plaintiff was seen by Bernard Alenda, N.P. for a post off site visit follow up. Exhibit 1 at 53-55. Plaintiff's clarithromycin, fluticasone nasal spray, and saline nasal spray were ordered. Id. It was noted that a copy of the discharge summary would have to be forwarded to the medical director for follow up consults to be generated. Id.

On February 18, 2016, Plaintiff was seen by Getachew Tefferra, M.D. at chronic care. Exhibit 1 at 56-57. Plaintiff was seen for his continuing right ear discomfort. Id. It was noted that Plaintiff's follow up consult was already generated. Id. Plaintiff's CT scan and hearing test results were to accompany Plaintiff. Id.

On February 22, 2016, Plaintiff was seen at Mercy Hospital by Ileana Showalter, M.D., a specialist in Otolaryngology. Exhibit 1 at 58-61. On Plaintiff's examination a right nasal mucosa culture was taken, and he had a right deviated septum. Id. Plaintiff's exam was otherwise unremarkable. Id. Plaintiff was assessed as having severe nasal septal deviation to the right, partially blocking the view of the right middle turbinate. Mucopurulence was seen in that area, draining into the nasopharynx. More space was available in the left side, with minimal mucopurulence. Plaintiff was recommended for a nasal endoscopy. Id.

On February 22, 2016, Plaintiff was seen by Zowie Barnes, M.D. for a post off site visit

---

[23] Clarithromycin is a macrolide antibiotic used to treat many different types of bacterial infections affecting the skin and respiratory system. See https://www.drugs.com/clarithromycin.html.

[24] Fluticasone belongs to a class of drugs known as corticosteroids. It works in your nose to block the effects of substances that cause allergies and to reduce swelling. See https://www.drugs.com/cdi/fluticasone-furoate-spray.html.

follow up. Exhibit 1 at 62. Plaintiff reported he had a discussion with the specialist regarding surgery. Id. Plaintiff was informed his condition would be evaluated by his health care providers. Id. It was noted Plaintiff may need to see otology for hearing loss. Id.

On March 9, 2016, Plaintiff was seen by Mike Romain, P.A. at provider sick call. Exhibit 1 at 63-64. Plaintiff continued to complain of sinus pain despite being compliant with his medications. Id. Plaintiff reported he was to be considered for surgery and a hearing aid; the provider sent an email to retrieve paper notes. Id. Plaintiff was prescribed Doxycycline Hyclate[25] and antacids. Id.

On March 16, 2016, Plaintiff was seen by Matthew Carpenter, P.A. at a scheduled provider visit. Exhibit 1 at 65-69. It was noted Plaintiff was a candidate for sinus surgery. Id. Plaintiff's CT scan results did not accompany him on his prior visit to Mercy Hospital. Id. A consult was placed for an audiology evaluation and a follow up with Mercy Hospital. Id. Plaintiff was prescribed doxycycline was renewed and probiotics ordered. Id.

On March 18, 2016, Plaintiff was seen by Oladipo Olaleye, R.N.P. at provider sick call. Exhibit 1 at 70-71. Plaintiff was following up on the doxycycline and probiotic orders and was informed it would arrive later in the day. Id.

On April 18, 2016, Plaintiff was seen by Brenda Taft-Hall, R.N.P. at provider sick call. Exhibit 1 at 72-73. Plaintiff wanted to check on the ENT consult. Id. Plaintiff was informed it had been generated. Id.

On April 19, 2016, Plaintiff was seen by Darryl Hill, M.D. at provider chronic care. Exhibit 1 at 74-75. Plaintiff's Ibuprofen and Doxycycline were renewed. Id.

On April 22, 2016, a consult was placed for an axial CT scan of sinuses for surgery

[25] Doxycycline hyclate is a tetracycline antibiotic used in treating certain bacterial infections. See https://www.drugs.com/doxycycline.html.

preparation. Exhibit 1 at 76.

On April 21, 2016, Plaintiff non-formulary doxycycline was approved. Exhibit 1 at 77.

On April 26, 2016, a consult was placed for Plaintiff's surgery for Septoplasty, bilateral partial submucousresection of his turbinates and bilateral functional endoscopic sinus surgery with balloon sinuplasty with fusion, scheduled for May 18, 2016.

On April 26, 2016, a consult was placed for Plaintiff's otology consult to evaluate hearing loss to rule out possible otosclerosis.[26] Exhibit 1 at 79.

On May 13, 2016, Plaintiff was seen by Priscilla Momoh, PA-C for a pre-operative evaluation. Exhibit 1 at 80-81. Plaintiff was in no acute distress and was otherwise unremarkable. Id. Plaintiff's non-compliance with his medications was discussed. Id.

On May 18, 2016, Plaintiff was seen at Mercy Hospital for sinus surgery. Exhibit 1 at 82-84. Plaintiff's axial CT scan was ordered and the Septoplasty, bilateral partial submucousresection of his turbinates and bilateral functional endoscopic sinus surgery with balloon sinuplasty with fusion was performed. Id.

On May 18, 2016, Plaintiff was seen by Priscilla Momoh, PA-C for a provider sick call. Exhibit 1 at 85-86. Plaintiff's post operative evaluation was that the procedure was well tolerated. Id. Plaintiff's discharge medications included Oxycodone,[27] Azithromycine,[28] Promethazine,[29] and Sudafed.[30] Id. Plaintiff was given a pass for a cane for one year, feed in until May 25, 2016, and a pass for narcotics until May 25, 2016. Id. A follow up consult at Mercy

---

[26] Chronic progressive deafness. Taber's Cyclopedic Medical Dictionary, 3rd Series, 16th Ed., p. 1285.

[27] Oxycodone is an opioid pain medication used to treat moderate to severe pain. See https://www.drugs.com/oxycodone.html.

[28] Azithromycin is an antibiotic that fights bacteria. See https://www.drugs.com/azithromycin.html.

[29] Promethazine is in a group of drugs called phenothiazines. It works by changing the actions of chemicals in your brain. Promethazine also acts as an antihistamine. It blocks the effects of the naturally occurring chemical histamine in your body. See https://www.drugs.com/promethazine.html.

[30] Sudafed (pseudoephedrine) is used for the temporary relief of stuffy nose and sinus pain/pressure caused by infection. See http://www.webmd.com/drugs/2/drug-6573/sudafed-oral/details.

Hospital was placed. Exhibit 1 at 87.

On May 19, 2016, Plaintiff filed his Complaint.

On May 20, 2016, Plaintiff was seen by Priscilla Momoh, PA-C for an unscheduled provider visit. Exhibit 1 at 88-90. Plaintiff complained of constipation after two days of taking the oxycodone. Id. Plaintiff was prescribed Milk of Magnesia,[31] Docusate Sodium[32] and Pseudoephedrine.[33] Id.

On May 24, 2016, Plaintiff's chart was updated by Priscilla Momoh, PA-C . Exhibit 1 at 91. Plaintiff was noted to be wheelchair bound and was given a work pass from May 23-27, 2016. Id.

On June 1, 2016, Plaintff was seen by Titilayo Otunuga, N.P. for provider sick call. Exhibit 1 at 92. Plaintiff stated he was to have nasal balloons and stents removed a week after surgery but was still waiting for that. Id. It was noted Plaintiff's follow up was scheduled for June 3, 2016. Id. Plaintiff reported a yellow bloody drainage from his nose. Id. Plaintiff stated he was prescribed Prilosec[34] for abdominal discomfort due to Ibuprofen but that he was not taking it due to what he had read. Id. Zantac[35] was ordered instead.

On June 3, 2016, Plaintiff was seen at Mercy Hospital for a follow up visit. Exhibit 1 at 94-96. Plaintiff was evaluated as having mild cellulitis of the face. Id. Plaintiff's Reuter-splints

---

[31] A short term laxative used to treat occasional constipation. See http://www.webmd.com/drugs/2/drug-326/milk-of-magnesia-oral/details.

[32] Docusate is a stool softener. It works by increasing the amount of water the stool absorbs in the gut, making the stool softer and easier to pass. See http://www.webmd.com/digestive-disorders/ss/slideshow-constipation-facts-10.

[33] Pseudoephedrine is a decongestant that shrinks blood vessels in the nasal passages. See https://www.drugs.com/pseudoephedrine.html.

[34] There is no record of a Prilosec prescription in Plaintiff's record. Exhibit 1.

[35] Ranitidine (Zantac) is in a group of drugs called histamine-2 blockers. It is used to treat and prevent ulcers in the stomach and intestines by reducing the amount of acid your stomach produces. It also treats conditions in which the stomach produces too much acid and those in which acid backs up from the stomach into the esophagus, causing heartburn. See http://www.drugs.com/ranitidine.html. Research now supports that the use of H2 blocker may offer you the strongest protection against histamine release. See http://www.ncbi.nlm.nih.gov/pubmed/19052407.

(for intranasal splinting of the nasal septum[36]) were removed. Id. Plaintiff asked the surgeon to recommend a follow up with audiology for a hearing aid. Id.

On June 3, 2016, Plaintiff was seen by Matthew Carpenter, P.A. for a post off site visit. Exhibit 1 at 97-99. The discharge report noted Plaintiff has nasal tip cellulitis and recommended Ciproflaxacin for treatment, which was ordered. Id. A follow up in 3 weeks was noted and a consult placed. Id.

On June 6, 2016, Plaintiff was seen by Priscilla Momoh, PA-C at provider sick call. Exhibit 1 at 101-102. It was noted that Plaintiff's otology consult from April 26, 2016, was still pending. Id. Plaintiff requested Tylenol#3 for pain because the Motrin was not working. Id. Instead, Naproxen[37] was ordered. Id.

On June 29, 2016, Plaintiff was seen by Jennifer Pope, N.P. for an unscheduled provider visit. Exhibit 1 at 103-105. Plaintiff was returning from his third follow up at Mercy Hospital. Id. Plaintiff's continuing cellulitis was recommended to be treated with Ciprofloxacin 250mg. Id. There was no recommendation for a follow up visit but Plaintiff stated a follow up in a couple of months had been recommended. Id. An email was sent to audiology for an update on the consult for a hearing aid. Id. Plaintiff complained of abdominal pain. Id. Tums were ordered for Plaintiff and a consult for the ENT follow up was submitted. Id.

Plaintiff's May 2016, medication administration records indicate that Plaintiff was provided oxycodone-acetaminophen 325mg on May 18, 2016 through May 25, 2016. Exhibit 2 at 106-109.

Plaintiff continues to have access to the medical staff through the sick call process and to be regularly seen as a chronic care patient.

---

[36] See http://www.bess.de/en/rhinology/intranasal-splints.html.

[37] Naproxen is a nonsteroidal anti-inflammatory drug (NSAID). It works by reducing hormones that cause inflammation and pain in the body. See https://www.drugs.com/naproxen.html.

## III. LEGAL STANDARDS

In review of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), plaintiff's well pleaded material facts may be taken as admitted, but not plaintiff's legal conclusions. Kugler v. Helfant, 421 U.S. 117, (1975). Dismissal of a complaint is appropriate when it appears to a reasonable certainty that the plaintiff is not entitled to relief under any statement of facts which could be proven in support of his claim. Wilson v. Civil Town of Clayton, 839 F.2d 375 (7th Cir. 1988). Therefore, when it is clear, as in the above captioned Complaint, that a plaintiff can prove no set of facts which would entitle him to relief, the complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Since there are no facts in this matter which would indicate a claim for violation of Plaintiff's civil rights under 42 U.S.C. § 1983, Plaintiff's Complaint and amendments thereto must be dismissed for failing to state a claim upon which relief can be granted.

Alternatively, Defendants are entitled to judgment in their favor as a matter of law. Federal Rule of Civil Procedure 56 provides that summary judgment shall be entered in favor of the moving party when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party has the burden to show that there is no dispute as to material facts, however, it need not negate its opponent's case, but need only to disclose the absence of evidence to support that case. Weinberger v. Bristol-Myers Co., 652 F. Supp. 187 189 (D. Md. 1986) (citations omitted).

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Johnson v. Aldana, 2009 U.S. Dist. Lexis 74131 at 13 (No. JFM-08-2111, D. Md., Aug. 19, 2009). To state an Eighth Amendment claim

for denial of medical care, a plaintiff must demonstrate that the actions of defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. Id. at 5; (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need is defined as "treatment [that is] so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Hodgson v. Corizon Med. Staff, 2012 U.S. Dist. Lexis 103484 at 19 (No. ELH-11-3515, D. Md. July 24, 2012); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

A showing of mere negligence is not enough to meet the standard. Hodgson, supra; see also Farmer v. Brennan, 511 U.S. 825, 835 (1994); Grayson v. Feed, 195 F.3d 692, 695 (4th Cir. 1999). Indeed, "mere error of judgment or 'inadvertent failure to provide medical care, while perhaps sufficient to support an action for malpractice, will not constitute a constitutional deprivation redressable under [42 U.S.C. § 1983]." Boyce v. Alizaduh, 595 F.2d 948, 953 (4th Cir. 1979) (quoting Estelle, 429 U.S. at 104). In addition, inmates do not have a constitutional right to treatment of their choice, Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986), and disagreements between medical staff and an inmate over the necessity for or extent of medical treatment do not rise to a constitutional injury and will not make out a cause of action under § 1983. Estelle, 429 U.S. at 105-106; Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Taylor v. Barnett, 105 F.Supp.2d 483,487 (E.D. Va. 2000); U.S. v. Clawson, 650 F.3d 530, 538 (4th Cir. 20

## IV. ARGUMENT

### A. PLAINTIFF FAILS TO ALLEGE FACTS SUFFICIENT TO WITHSTAND DISMISSAL UNDER FED. RULE CIV. PROC. 12(b)(6).

"[W]here the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the

complaint in regard to that defendant should be granted." Dove v. Fordham Univ., 56 F.Supp.2d 330, 335 (S.D.N.Y.1999), quoting Morabito v. Blum, 528 F.Supp. 252, 262 (S.D.N.Y.1981); Zavatsky v. Anderson, 130 F.Supp.2d 349, 358 (D.Conn. 2001) (complaint naming two defendants only in the caption was dismissed as to those two defendants.) "Further, even a pro se plaintiff has the burden of alleging sufficient facts upon which a recognized legal claim could be based. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.1991); Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir.1996)." Allison v. Utah County Corp. 223 F.R.D. 638, 639 (D. Utah 2004).

To state a constitutional cause of action requires that some facts be alleged against the defendants showing some basis for the allegation of constitutional delinquency. In the absence of such facts, the pro se complaint should be dismissed. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). As Twombly expounded, and Iqbal confirmed, the standard of sufficiency for federal pleadings "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 555). A complaint must pass a plausibility test that "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949. Though Federal Rule of Civil Procedure 8 imposes no "hyper-technical" pleading requirements, it also "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950. Instead, Rule 8 "'contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented' and does not authorize a pleader's 'bare averment that he wants relief and is entitled to it.'" Twombly, 550 U.S. at 1965 n.3 (emphasis added ) (quoting 5 Wright & Miller, Federal Practice and Procedure § 1202 at 94-95 (3d ed. 2004)). Under these standards, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 129 S. Ct. at 1950. Thus, in cases like this one, where plaintiffs "have not nudged their claims across

the line from conceivable to plausible, their complaint must be dismissed." Twombly, 550 U.S. at 1974.

Plaintiff alleges insufficient facts to raise his allegations to the level of plausibility that Twombly and Iqbal require. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (emphasis added). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

Plaintiff utterly fails to allege ***any*** wrongdoing or the provision of "improper" medical care against ***any*** of the Wexford Defendants in the body of his Complaint, supplement or amendment. ECF Nos. 1, 7, and 13. Given that there is **absolutely no** allegation against any of the Wexford Defendants, and no indication of what was alleged to be improper medical care, how it was alleged to be improper, or when it was allegedly provided, this case must be dismissed as to all Wexford Defendants.

Further, Plaintiff's medical records in the relevant period do not indicate that Plaintiff was ever treated by Millicent Jenkins, RN, Kimberly Carter, RN, or John Moss, PA. How they could conceivably be culpable of providing "improper" medical care when they didn't provide **any** medical care to Plaintiff is not cognizable, and they must accordingly be dismissed.

### B. PLAINTIFF FAILS TO STATE ANY CAUSE OF ACTION UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. SECTION 1983

As a threshold matter, it is well-established that *respondeat superior* has no application in 42 U.S.C. § 1983 claims. See Powell v. Shopco Laurel, Co., 678 F. 2d 504, 506 (4th Cir., 1982) (holding that the proscription of *respondeat superior* forming the basis of § 1983 claims applies with equal force to private corporations). Rather, a private corporation carrying out a

governmental function, such as the delivery of medical care in a prison setting, may be sued under § 1983 for constitutional deprivations only if they result from policy, custom or practice of the entity. Monell v. New York City Dept. of Soc. Serv's., 436 U.S. 658 at 690 (1978). Accordingly, to establish a claim against Wexford, Plaintiff must demonstrate Wexford maintained unconstitutional policies and procedures that were the motivating force behind the alleged constitutional violations of its employees. A claim for policy or custom liability requires a plaintiff allege and prove: (1) **the existence of an official policy or custom** (2) that is fairly attributable to the defendant; and (3) **that proximately caused the underlying violation of the plaintiff's rights**. See Monell, 436 U.S. at 690; Jordan ex rel. Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994); Newbrough v. Piedmont Reg'l Jail Auth., 822 F. Supp. 2d 558, 582, (E.D. Va. 2011). Plaintiff's Complaint alleges none of these. See ECF No. 1.

Consequently, as Wexford is a private corporation and not a "person" for § 1983 purposes, and since Plaintiff has not alleged that any of Wexford's policies or procedures violated Plaintiff's Constitutional rights, no claim will lie against Wexford under § 1983 and it should be dismissed as a Defendant. Id.

To state a cause of action under §1983, a plaintiff must allege conduct indicating "deliberate indifference" to a "serious illness or injury." Estelle v. Gamble, 429 U.S. 97, (1976). In the context of an alleged denial of medical care, the health care provider's alleged conduct and treatment must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848,851 (4th Cir. 1990) (citation omitted.)

Moreover, in order to state a cause of action under § 1983 in a medical context, the plaintiff must allege specific facts showing an intentional denial of needed medical care or a

failure to provide diagnosis or treatment readily available. Estelle, 429 U.S. 97 (1976). Accordingly, a plaintiff must supply "hard evidence" of an unnecessary and wanton infliction of pain which has resulted in serious medical or emotional deterioration. Lopez v. Robinson, 914 F.2d 486 (4th Cir. 1990). The Supreme Court in Estelle distinguished between an inadvertent failure to provide medical care and a deliberate indifference to serious medical needs. Only the latter can form the basis for an action under § 1983. Daniels v. Gilbreath, 668 F.2d 477, 482 (10th Cir. 1982). A plaintiff's bare and\or conclusory allegations that the defendant acted with deliberate indifference to Plaintiff's serious medical needs is insufficient to state a cause of action under § 1983. Estelle, 429 U.S. 97 (1976).

Additionally, a plaintiff must adequately plead that the health care provider acted with a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294 (1991). Thus, the plaintiff must allege that the health care provider exhibited a wanton and unyielding disregard to an objective intolerable risk of harm to Plaintiff. Farmer v. Brennan, 511 U.S.825 (1994). Said conduct on the part of the health care provider must rise to the level of subjective recklessness, in a criminal sense, to a substantial risk of danger of which they are specifically aware. Id.

This intent requirement is implicit in the Eighth Amendment's proscription of cruel and unusual punishment. Acts which are inadvertent, accidental or made in good faith do not constitute punishment and do not violate the Eighth Amendment. Brewer v. Blackwell, 836 F.Supp. 631 (S.D. Iowa 1993). Accordingly, Plaintiff must allege acts or omissions sufficiently harmful to evidence deliberate indifference. Estelle, 429 U.S. at 105-106.

In application of the foregoing to the case at bar, Plaintiff has not set forth sufficient facts to establish that Defendants knowingly failed to provide constitutionally adequate medical care to a serious medical need, much less that Defendants acted with deliberate indifference. See ECF

Nos. 1, 7 and 13. As discussed above, Plaintiff raises no allegations against any of the Wexford Defendants. Therefore, they simply cannot be held in violation of § 1983 and must be dismissed.

Further, the allegations and factual information provided by Plaintiff are actually allegations of *providing* medical care for Plaintiff's various medical conditions. Plaintiff admits he is on medications, indeed, so many that he has abdominal problems. See ECF No. 1 and 7. Plaintiff requests to reserve the right to amend his complaint "due to ongoing treatment" he is receiving. ECF No. 7. Plaintiff admits he had sinus surgery at Mercy Hospital on May 18, 2016. Id. Plaintiff admits he received post-operative medications. Id. Planitiff admits he has had follow up visits to Mercy Hospital. Id. In short, Plaintiff's complaint is literally limited to the statement in his Complaint that he has not received "proper" medical care. See ECF No. 1.

It is clear that Plaintiff simply disagrees with the treatment he was provided.

Plaintiff's disagreement with medical providers regarding the nature of his medical care does not constitute a viable constitutional claim. "An inmate's disagreement with medical providers about the proper care and course of treatment does not support a § 1983 claim, in the absence of "exceptional circumstances." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); See Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975). This is because an inmate does not have a constitutional right to specific medical treatment on demand, simply because he thinks he needs a certain procedure, nor does he have a constitutional right to be treated by a specific doctor, nurse, or other medical personnel." Shannon v. Dep't of Pub. Safety, 2012 U.S. Dist. LEXIS 48402, *17-18 (D. Md. Apr. 5, 2012).

At most Plaintiff's claims merely state a disagreement over the medical treatment he has received. See Rochell v. Corr. Med. Servs., No. 4:05CV268, 2006 U.S. Dist. LEXIS 37943, at 10 (N.D. Miss. April 10, 2006) ("The constitution does not . . . guarantee pain-free medical

treatment . . . . While the plaintiff might have preferred stronger medication, his mere disagreement with his medical treatment does not state a constitutional claim."); see also Baez v. Falor, 2012 U.S. Dist. LEXIS 138574, 101, 2012 WL 4356768 (W.D. Pa. 2012) and Goff v. Bechtold, 632 F. Supp. 697 (S.D.W. Va. 1986).

Accordingly, Plaintiff's claim of a disagreement with the medical care provided to him does not raise a claim rising to a constitutional violation. Construed most favorably to Plaintiff, Plaintiff's claims concern bald allegations of denial of Plaintiff's preferred care and not a deprivation of care invoking his constitutional rights. Id.

Plaintiff's allegations that he was denied medical care are incorrect; it is clear that Plaintiff has been receiving medical care to treat his conditions. In his Complaint Plaintiff admits to receiving constitutionally adequate medical care and by his acknowledgement of care concedes that at most his treatment may arguably rise to medical negligence. However, it is well settled that negligence alone does not state a claim under 42 U.S.C. Section 1983 as §1983 was amended to protect only federal rights guaranteed by federal law and not tort claims for which there are adequate remedies under state law. Estelle v. Gamble, 429 U.S. 97; Wright v. Collins, 766 F.2d 841, 849 (1985). Thus, claims of negligence and\or medical malpractice which assert merely a disagreement over treatment between an inmate and his health care providers do not state a claim under §1983. See Estelle, 429 U.S. 91 and see Hughes v. Joliet Correctional Center, 931 F.2d 425, 428 (7th Cir. 1991) (if the claim is merely medical malpractice, it should be brought in state court).

Given the legal standard necessary to state a claim under §1983, it is patently obvious that Plaintiff's Complaint falls far short of the required standard to withstand this Motion to

Dismiss. Therefore, Plaintiff's Complaint must be dismissed as failing to state a claim upon which relief can be granted.

### C. BASED ON THE UNDISPUTED MATERIAL FACTS DEFENDANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

Summary Judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56, Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Based on the undisputed material facts as presented in the pleadings, the relevant medical records of Plaintiff attached hereto as Exhibit 1, and the Affidavit of Kasahun Temesgen, M.D. ("Dr. Temesgen"), attached as Exhibit 2, the Wexford Defendants are entitled to judgment as a matter of law.

Other than Plaintiff's bald and unsubstantiated conclusions, Plaintiff has presented no admissible evidence that Defendants acted to deliberately deny or deprive Plaintiff of any necessary medical care. See Exhibit 1 and Exhibit 2. Rather, the record reflects that the Defendants provided Plaintiff constitutionally adequate medical care. Id.

Here, there is no evidence that Defendants were deliberately indifferent to Plaintiff's medical needs. Nor is there evidence that Plaintiff's condition was ignored. In determining whether a prisoner has received adequate medical treatment, a court is entitle to rely on the medical records kept in the ordinary course of operation. Bennett v. Reed, 534 F.Supp. 83, 86 (E.D.N.C. 1981) aff'd, 676 F.2d 690 (4th Cir. 1982). When it appears from the entire record that the prison medical or mental health authorities have made a sincere and reasonable effort to handle the plaintiff's medical problems, plaintiff's constitutional rights have not been violated. Id. at 87 (emphasis added). Plaintiff's relevant medical records, which document the treatment provided to Plaintiff during the time period relevant to the Complaint, illustrate that the Plaintiff has consistently received medical care, and continues to be seen by the medical department.

Plaintiff alleges that in general "Wexford" has failed to provide Plaintiff "proper" medical care. ECF No. 1. Plaintiff does not specify any time period, medical condition or medical provider for the alleged improper medical care. Id. Notwithstanding the lack of specificity, Dr. Kasahun Temesgen, the Wexford regional medical director for the Jessup region, including JCI, reviewed Plaintiff's electronic medical record in its entirety. See Affidavit if Dr. Temesgen attached as Exhibit 2. In Dr. Temesgen's opinion to a reasonable degree of medical probability, Plaintiff did not perceive any improper or inappropriate medical care for his medical complaints while he was at JCI. Id.

With regard to Plaintiff's general allegation that "nothing" was done for his ear problems while at JCI, Plaintiff first reported an earache in his right ear in January 2015. Exhibit 1 at 2. Over time Plaintiff additionally complained of pain, dizziness, and nausea related to his right ear condition. See Exhibits 1 and 2. Over the course of the next year and a half to the current date, Plaintiff was seen by health care providers at JCI for his right ear complaints on a regular basis. Id. During that period of time Plaintiff was seen over 24 times by his onsite medical providers. Id. Plaintiff was initially seen by mid-level providers but when Plaintiff's condition did not resolve Plaintiff was referred to physician providers and eventually placed in chronic care for regular evaluation of his ear condition. Id. To alleviate Plaintiff's ear condition he was prescribed various medications. Id. For his right ear complaints Plaintiff's treatment medications included: Ibuprofen, Cipro, Aprodine, Keflex, Antivert, Claritin, Ciprodex, Loratadine, Meclizine,Azithromycin, Augmentin, Debrox, Clarithromycin, Doxycycline, and Promethazine. Id.

When Plaintiff's condition did not respond to the medications (every patient responds differently to each medication), Plaintiff's medications were appropriately modified with the goal of achieving long term relief. See Exhibit 2.

Plaintiff was sent by his health care providers to both Bon Secours Hospital and Mercy Hospital for ENT consultations regarding both his sinus and ear conditions. See Exhibits 1 and 2. Consultations were placed for Bon Secours and Mercy Hospital ENT evaluations in May and July, 2015. Id. Plaintiff's sinus condition was evaluated to be of more direct concern than his ear condition. See Exhibit 2. Consultations were placed in April 2016 for an ENT sinus surgery evaluation; on May 18, 2016 for post-surgery follow up; June 2016 for a second follow up post-surgery. Id. Consultations for a hearing test were placed in July and October 2015, and in March and April 2016. Id. In June 2016 a consultation with a neurotologist and audiologist was placed for a follow up examination post-surgery. Id. In addition, consultations for a CT scan were placed in October 2015, in March 2016 for ENT follow up on the CT results; and on April 2016, a CT scan in preparation for surgery was placed. Id. In July 2015, Plaintiff was seen by Dr. Mumtaz at Bon Secours Hospital. See Exhibits 1 and 2. At that time Dr. Mumtaz evaluated Plaintiff and recommended a CT scan of the sinuses and a hearing test. Id. Plaintiff was seen at the Mercy Hospital ENT clinic on February 1, 2016, and was recommended for a follow up visit when Plaintiff's CT scan and audiogram results were available. Id. Plaintiff underwent sinus surgery for septoplasty/resection of his turbinates/balloon sinuplasty with fusion at Mercy Hospital on May 18, 2016. Id.

In January 2016, Plaintiff was evaluated by Dr. Ross Cushing, an audiologist, for his hearing loss. Exhibit 1 at 45, Exhibit 2. Dr. Cushing noted Plaintiff's right ear hearing loss and recommended follow up with an ENT specialist. Id. Dr. Cushing did not recommend a hearing

aid at that time. Id. Plaintiff's offsite ENT specialists have recently recommended that Plaintiff be evaluated for a hearing aid. See Exhibit 2. However, outside consultant recommendations are not immediately accepted as a necessary course of treatment, as the additional constraints of the patient being in the care of DPSCS must be considered. Id. Not only security considerations apply, but in addition only medically necessary, not merely beneficial, courses of treatment are routinely adopted. Id. Whether Plaintiff's right ear condition warrants a hearing aid has not yet been determined. Id.

Plaintiff complains that after his sinus surgery on May 18, 2016, that it took "almost" a week to get his post-operative pain medications. ECF No. 7. On return to JCI on May 18, 2016, an order for Plaintiff's recommended medications, which included Percocet, Azithromycine, Promethazine, and Sudafed, was placed the same day. Exhibits 1 and 2. Plaintiff complained within two days of that date that taking the oxycodone caused him to be constipated. Exhibit 1 at 88-89. Clearly, Plaintiff received his medications the day he returned from the hospital.

Finally, Plaintiff complains that his follow up visit to Mercy Hospital was nine days late, which allegedly caused him to have an "infection" because "stuff" was left in in his nose too long. ECF No. 7. Plaintiff's follow up visit was placed by his health care provider on May 18, 2016. See Exhibit 1 at 87. Scheduled for June 3, 2016. Id. at 92. The follow up was completed on June 3, 2016. Exhibit 2. There are many factors that can impact the date an offsite visit is scheduled. Id. There is no indication that any of Plaintiff's health care providers were involved in choosing the June 3rd date. Id. When Plaintiff was seen on June 3, 2016, a mild incidence of cellulitis was noted. Id. In Dr. Temesgen's opinion to a reasonable degree of medical probability, there is no evidence that the cellulitis developed because of the timing when it was evaluated, and in any case, it was appropriately treated with ciprofloxacin. Id.

In Dr. Temesgen's opinion to a reasonable degree of medical probability, Plaintiff has received appropriate treatment for his right ear pain, hearing loss and related sinus issues. Exhibit 2. Plaintiff will continue to be regularly seen at chronic care and to have access to medical staff at all times via the sick call process. Id.

Based on the undisputed facts, it is clear that Plaintiff cannot sustain a § 1983 action against these Defendants as there is absolutely no evidence that they intentionally or deliberately acted to deprive Plaintiff of necessary medical treatment. See Exhibit 1 and 2. Moreover, the undisputed facts demonstrate that Plaintiff has received significant, medically appropriate, care for the conditions in question. See Exhibit 1 and Exhibit 2.

In light of the foregoing, the the Wexford Defendants are entitled to judgment as a matter of law as based on the undisputed material facts there is no evidence from which a jury could reasonably find for Plaintiff. Anderson, 477 U.S. 242 (1986).

## V. CONCLUSION

Plaintiff's Complaint fails to state a claim upon which relief can be granted and must be dismissed. Alternatively, the undisputed facts establish that Plaintiff has received constitutionally adequate medical care. Thus, there is no evidence that the Defendants willfully and knowingly disregarded Plaintiff's substantial medical needs.

Respectfully submitted,

**MEYERS, RODBELL & ROSENBAUM, P.A.**

By: ________/s/______________
Joseph B. Chazen
Federal Bar No. 03154

By: ________/s/______________
Gina M. Smith
Federal Bar No. 22425
6801 Kenilworth Avenue, Suite 400
Riverdale, Maryland 20737
(301) 699-5800

{195181.DOC}