IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROGER HAUTH, 307983                          *
                                             *
        Plaintiff                            *
                                             *
        v                                    *        Civil Action No. DKC-16-1541
                                             *
WEXFORD HEALTH SOURCES, INC.[1]              *
DPSCS, *Dep't. of Public Safety and*         *
  *Correctional Services,*                   *
JOHN MOSS, PA,                               *
EMMANUAL ESIANOR, PA,                        *
MIKE ROMAIN, PA,[2]                          *
MATTHEW CARPENTER, PA,                       *
PRICILLA MOMOH, PA,                          *
TITILAYO OTUNUGA, PA,                        *
MRS. BAILEY, RN,                             *
BRENDA TAFT HALL, RNP,                       *
OLADIPO OLAEYE,                              *
MARY ROCKEFELER, PA                          *
BERNARD ALENDA, NP,                          *
ZOWIE SHEENA BARNES, MD,                     *
BOLAJI ONABJO, MD,                           *
DARRYL HILL, MD,                             *
GETACHEW TEFFERA, MD,                        *
DR. PATINO,                                  *
DR. CUFFEY,                                  *
DR. AZIZ,                                    *
KIM CARTER,                                  *
MILLICENT JENKINS,                           *
MUMBY & SIMMONS, PC,                         *
CORRECTIONAL DENTAL ASSOCIATES,              *
                                             *
        Defendants                           *
                                           ***

## MEMORANDUM OPINION

Self-represented plaintiff Roger Hauth is incarcerated at Jessup Correctional Institution in

Maryland.  On May 19, 2016, he filed this complaint against Wexford Health Sources, Inc.

---

[1]     Hauth misspelled the names of several medical defendants.  The Clerk shall amend the docket to reflect the proper spelling of Defendants' names as they appear in their motion to dismiss or, in the alternative for summary judgment.  ECF No. 30 at p. 1 and nn. 1-8.

[2]     Service was not obtained on Mike Romain, Mrs. Bailey or Brenda Taft Hall.  ECF Nos. 8, 30 n. 9.  Hauth fails to state a colorable claim of Eighth Amendment violation against these Defendants, and they will be dismissed from this action.

("Wexford") and the Department of Public Safety and Correctional Services ("DPSCS"), claiming that Wexford provided him constitutionally inadequate medical care and DPSCS failed to "intervene" on his behalf. ECF No. 1 at p. 4. He seeks relief to include "reasonably adequate medical care," sinus surgery, a hearing aid or surgery, and monetary compensation of an unstated amount for allegedly permanent damages suffered to his sinuses and ears, pain and suffering, stress, and stomach problems resulting from medications. ECF No. 1 at p. 4.[3]

## BACKGROUND

Cognizant that complaints filed by self-represented litigants are held to a less stringent standard than those drafted by attorneys, and a complainant who submits an inartfully pleaded action which contains a potentially cognizable claim should be given the opportunity to particularize his complaint in order to define his issues, *see Erickson v. Pardus,* 551 U.S. 89, 94 (2007), the court ordered Hauth on May 26, 2016, to supplement the complaint to identify the individuals he claimed were responsible for his allegedly inadequate medical treatment. On June 14, 2016, Hauth supplemented the complaint to name John Moss, PA, Emmanuel Esianor, PA, Matthew Carpenter, PA, Priscilla Momoh, PA, Titilayo Otunuga, PA, Oladipo Olaleye, PA, Mary Rockefeller, PA, Zowie Sheena Barnes, MD, Bolaji Onabajo, MD, Darryl Hill, MD, and Gatachew Tefferra, MD as defendants. ECF No. 7. On July 11, 2016, Hauth filed a motion to amend the complaint to name Kimberly Carter, RN, Millicent Jenkins, RN, and Bernard Alenda, NP as additional defendants. The court granted the motion on July 18, 2016. ECF Nos. 13, 15. The court shall refer to Defendants listed in this paragraph, collectively, as the "Wexford Defendants."

Hauth's motion to amend (ECF No. 13) also added dental practitioners Dr. Patino, Dr. Cuffey, and Dr. Aziz as defendants. *Id.* On July 25, 2016, Hauth filed correspondence seeking

_____

[3] Hauth also asks to be placed in a single cell for safety issues due to his hearing impairment. However, he provides no details regarding purported safety issues.

to add Mumby & Simmons and Dental Consultants, PC as Defendants. ECF No. 16. On July 27, 2016, the court granted Hauth twenty-one days to specify how these Defendants violated his constitutional rights. Hauth filed additional information on August 15, 2016. ECF No. 23. He stated "the two dentists that I already named are Dr. Cuffey and Dr. Aziz [sic]. The oral surgeon is Dr. Patino." *Id.* Hauth claimed Dr. Cuffey punctured his sinus canal when she pulled his tooth and "broke the root of the good tooth next to it," causing him to lose that tooth as well. Hauth identified the dental contractor as Mumby & Simmons, Dental Consultants, but does not allege Cuffey, Azizz or Patino were employees or agents of Mumby & Simmons. *Id.*

Pending before the court is a motion to dismiss, or in the alternative for summary judgment filed by the Wexford Defendants (ECF No. 30) to which Hauth filed oppositions (ECF Nos. 34, 39) and the Wexford Defendants filed a reply (ECF Nos. 42, 48). Also pending is DPSCS' motion to dismiss (ECF No. 37) and Hauth's opposition thereto (ECF No. 47). Defendants Mumby & Simmons Dental Consultants, P.C., Hayden Patino, D.D.S., and Andrew Aziz, D.D.S. have filed a motion to dismiss or, in the alternative, for summary judgment (ECF No. 52) which is opposed by Hauth (ECF No. 54). Dr. Floretta Cuffey filed a motion to dismiss or, in the alternative, motion for summary judgment (ECF No. 56) and Hauth filed an opposition (ECF No. 64).[4] Correctional Dental Associates filed a separate motion to dismiss or, in the

---

[4] In his opposition to Cuffey's dispositive motion, Hauth asked for appointment of counsel because he is unable to review court dockets and claims that he has no access to legal materials or a copy machine. (ECF No. 64 at p. 3). He noted that he has requested appointment of counsel several times. (ECF Nos. 39, 47). On May 31, 2016, Hauth filed a motion for appointment of counsel which was denied without prejudice on June 3, 2016. (ECF Nos. 5, 6). It is within this court's discretion to determine whether counsel should be appointed in a civil proceeding. 28 U.S.C. §1915(e)(1). The court will appoint counsel "only in exceptional cases." *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). This determination takes into account "the type and complexity of the case," whether the plaintiff has a colorable claim, and a plaintiff's ability to prosecute the claim. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) (internal quotation marks and citations omitted), abrogated on other grounds by *Mallard v. U.S. District Court for the Southern District of Iowa*, 490 U.S. 296 (1989). Hauth's claims are not unduly complex and he has adequately presented his claims and filed oppositions in response to Defendants' dispositive motions. Lack of familiarity with the law and restricted access to a law library do not constitute exceptional circumstances. Further he has been afforded opportunities to supplement, clarify and amend his claims. (ECF Nos. 3, 7, 13, 15, 17, 23). Accordingly, appointment of counsel is unwarranted.

alternative, motion for summary judgment (ECF No. 59) to which Hauth filed an opposition (ECF No. 66).[5]

The matter is briefed and ready for disposition. After considering the papers, exhibits, and applicable law, the court finds a hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For reasons to follow, the Wexford defendants' motion to dismiss or in the alternative for summary judgment (ECF No. 30), will be granted. The claims against Wexford Health Sources, Inc. will be dismissed with prejudice. Summary judgment will be granted in favor of John Moss, PA, Emmanuel Esianor, PA, Matthew Carpenter, PA, Priscilla Momoh, PA, Titilayo Otunuga, PA, Oladipo Olaleye, PA, Mary Rockefeller, PA, Zowie Sheena Barnes, MD, Bolaji Onabajo, MD, Darryl Hill, MD, Gatachew Tefferra, MD, Kimberly Carter, RN, Millicent Jenkins, RN, and Bernard Alenda, NP. The DPSCS' motion to dismiss (ECF No. 37) will be granted, and the claims against DPSCS will be dismissed with prejudice. Defendants Mumby & Simmons Dental Consultants, P.C., Hayden Patino, D.D.S., and Andrew Aziz, D.D.S.'s motion to dismiss or, in the alternative, for summary judgment (ECF No. 52) will be granted. The claims against Mumby & Simmons will be dismissed. Summary judgment will be granted in favor of Drs. Aziz and Dr. Patino. Correctional Dental Associates' motion to dismiss or, in the alternative, motion for summary judgment (ECF No. 59), will be granted and the claims against it dismissed with prejudice. Dr. Floretta Cuffey's motion to dismiss or in the alternative, motion for summary judgment (ECF No. 56), treated as a motion for summary judgment, will be granted and judgment will be entered in her favor.

## STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A complaint

---

[5] Consonant with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Clerk sent notice to Hauth informing him that he may file a response with affidavits and exhibits in support. (ECF Nos. 31, 38, 53, 57, 60). Plaintiff filed exhibits but no testimonial evidence.

need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). At this stage, all well-pleaded allegations in the complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Generally, pro se pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner,* 404 U.S. 519, 520 (1972). Liberal construction means that the court will read the pleadings to state a valid claim to the extent that it is possible to do so from the facts available; it does not mean that the court should rewrite the complaint to include claims never presented. *Barnett v. Hargett*, 174 F.3d 1128, 1132 (10th Cir. 1999). The court cannot ignore a clear failure to allege facts that support a viable claim. *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 391 (4th Cir. 1990); *Forquer v. Schlee*, No. RDB–12–969,

2012 WL 6087491, at *3 (D. Md. Dec. 4, 2012) ("[E]ven a pro se complaint must be dismissed if it does not allege a plausible claim for relief." (citation and internal quotation marks omitted)).

A motion for summary judgment is granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250; *JKC Holding Co. v. Wash. Sports Ventures, Inc*., 264 F.3d 459, 465 (4th Cir. 2001).

The moving party bears the burden of showing that there is no genuine dispute as to any material fact. If the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof, however, then there is no genuine dispute of material fact. *Celotex,* 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an "affidavit or other evidentiary showing" demonstrating that there is a genuine issue for trial. *See Ross v. Early*, 899 F.Supp.2d 415, 420 (D. Md. 2012), aff'd, 746 F.3d 546 (4th Cir. 2014). "A mere scintilla of proof ... will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted). In other words, a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation omitted); *see Bouchat v. Balt. Ravens Football Club, Inc*., 346 F.3d 514, 522 (4th Cir. 2003). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999

F.2d 774, 778–79 (4th Cir. 1993).  At the same time, the court must construe the facts presented in the light most favorable to the party opposing the motion.  *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.  The court will examine the record against this analytical framework.

## DISCUSSION

Hauth alleges that the medical and dental treatment amounted to deliberate indifference to his serious medical needs and violated his rights under the Eighth Amendment to the United States Constitution.  ECF No. 1.

### I.      Eighth Amendment

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment."  *DeLonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106; *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir.  2014).

A "'serious ... medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

Denial of dental care is considered a denial of medical care, which can constitute an Eighth Amendment violation when prison authorities are deliberately indifferent to an inmate's serious medical needs.  *See Estelle*, 429 U.S. at 105, *see also Hunt v. Dental Dep't*, 865 F.2d

198, 200 (9th Cir. 1989) ("'dental care is one of the most important medical needs of inmates.'")

(quoting *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980)).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, prison staff were aware of the need for medical attention but failed either to provide it or ensure the needed care was available. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). The Fourth Circuit explained in *Lightsey*, 775 F.3d at 178, that deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." Therefore, "[t]o show an Eighth Amendment violation, it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178. This is as an "exacting standard...." *Id.* Moreover, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n. 8 (4th Cir. 2014).

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter ... becomes essential to proof of deliberate indifference because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment." *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an

official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844.

Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris,* 240 F.3d 383, 390 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken). The medical treatment provided must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). Further, "[a] prisoner's disagreement with medical providers about the proper course of treatment does not establish an Eighth Amendment violation absent exceptional circumstances." *Lopez v. Green*, 2012 WL 1999868, at *2–3 (D. Md. June 4, 2012) (citing *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir.1985)); *see Wester Jones*, 554 F.2d 1285 (4th Cir. 1979). Inmates do not have a constitutional right to the treatment of their choice, *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir.1986), and disagreements between medical staff and an inmate over the necessity for or extent of medical treatment do not rise to a constitutional injury. *See Estelle*, 429 U.S. at 105–06; *Wright*, 766 F.2d at 849 (4th Cir.1985). Further, "any negligence or malpractice on the part of ... doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998).

## II. Hauth's Claims

On February 18, 2013, Dr. Floretta Cuffey extracted Hauth's upper left tooth. ECF No. 1-1 at p. 2; ECF No. 56-4. Hauth alleges that the procedure ruptured his sinus canal, causing him to suffer sinus and ear problems. ECF No. 1-1 at p. 2. He states that he was treated subsequently by dentists and an oral surgeon with antibiotics and pain medication and then referred to medical providers. *Id.* Hauth complains that he requested medical care many times beginning on

January 5, 2015, and was seen by multiple providers for his complaints of ear pain, hearing problems, headaches, dizziness, and stomach pain. ECF No. 7-1. He claims that the medical care he received between January 5, 2015 and May 5, 2016 was improper because although he was seen by medical providers and prescribed antibiotics, his medical concerns did not resolve. ECF No. 1-1 at p. 2. He claims that he would not have needed to be seen by so many different medical providers on so many occasions had he been provided proper care. ECF No. 39-5. Hauth claims that, due to this alleged lack of proper medical treatment, he needed sinus surgery at Mercy Hospital on May 18, 2016. ECF No. 1-1 at p. 2.

In a sick call slip he submitted as an attachment to the complaint, Hauth states that on March 12, 2015, he was prescribed Keflex, Motrin, and Claritin, but it took over a week to fill his prescription. *Id*. at p. 5. Hauth further complains that subsequent to his surgery, he was not transported for a timely post-surgical visit to remove his stitches and "stents."[6] ECF No. 7 at p. 1, 2. Hauth claims that he spoke to Mrs. [Millicent] Jenkins on May 23, 24, and June 1, 2016, but she acted like she was unaware that he needed to return for a follow-up visit. *Id*. at p. 2. Hauth states that he did not return to Mercy Hospital for the follow-up until June 3, 2016, nine days later than the recommended time. Hauth claims that he developed an infection and needed antibiotics as a result. He asserts that the combination of antibiotics, pain medications and stomach medications prescribed caused him to feel unwell. *Id*.

On March 15, 2013, Hauth filed ARP JCI-590-13 in which he complained that Cuffey had broken his tooth and had to pry the root, "causing a lot of trauma" to his mouth. ECF No. 39-6 at p. 1. William Mumby, DDS investigated the ARP complaint, listing the dental care and follow-up Hauth received and recommended its dismissal for lack of merit. *See infra* pp. 24-25. On April 19, 2013, Hauth withdrew the ARP. ECF No. 56-6; *see infra* p. 25.

---

[6]    It is likely that Hauth is referring to the nasal splints, not "stents," that were placed during his surgery. ECF No. 30-4 at p. 95.

Hauth filed with his opposition to the Wexford Defendants' dispositive motion, copies of

Administrative Remedy Procedure ("ARP") request, JCI-0651-16, which he filed on June 1,

2016 (ECF No. 39-4 at p. 6) and the response he received from Warden Wayne A. Hill dated

July 8, 2016. Hill's response to the ARP reads:

> Your request for administrative remedy has been investigated and was found to be MERITORIOUS IN PART. According to the Health Service Administrator, there is no proof that your cellulitis was caused by a packing inside of your nose. The cellulitis was at the tip of your nose. The packing was in your nasal cavity. The recommendation for your follow up was to be one week post—op. that did not occur. The HSA will ensure medical staff follows up on post op appointment return dates. If you have any other concerns you are advised to submit a sick call slip. As such no further action will be taken.

ECF No. 39-4 at p. 5.

### III.    Defendants' Responses

### A.  Wexford Defendants' Response

The Wexford Defendants assert they are entitled to dismissal of the claims against them

or for summary judgment in their favor because the allegations do not state a cause of action and

are barred under the doctrine of respondeat superior.[7]  ECF No. 30.

### 1.    Claims against Wexford Health Sources, Inc.

The doctrine of respondeat superior does not apply in § 1983 claims.  *See Love–Lane v.*

*Martin*, 355 F.3d 766, 782 (4th Cir.  2004) (no respondeat superior liability under § 1983; *Powell*

*v. Shopco Laurel Co*., 678 F.2d 504, 506 (4th Cir. 1982).  Furthermore, a private corporation is

not liable under § 1983 for actions allegedly committed by its employees if liability is predicated

solely upon a theory of respondeat superior.  *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715,

727–28 (4th Cir.1999); *Powell,* 678 F.2d at 506 (4th Cir.1982); *Clark v. Maryland Dep't of*

*Public Safety and Correctional Services*, 316 F. App'x 279, 282 (4th Cir. 2009).  Thus, Hauth

---

[7]    Respondeat superior is a legal doctrine holding that, in some circumstances, an employer is liable for the actions of an employee performed within the scope of employment.

may not raise respondeat superior claims against Wexford, which is a corporate entity that cannot be held liable under 42 U.S.C. § 1983.

In order to hold Wexford under a theory of supervisory liability, Hauth would have to establish the existence of an official policy or custom that caused a violation of his rights. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). Because Hauth fails to assert any allegations in this regard, the claims against Wexford, Inc. will be dismissed.

**2. Claims against John Moss, PA, Emmanuel Esianor, PA, Matthew Carpenter, PA, Priscilla Momoh, PA, Titilayo Otunuga, PA, Oladipo Olaleye, PA, Mary Rockefeller, PA, Zowie Sheena Barnes, MD, Bolaji Onabajo, MD, Darryl Hill, MD, Gatachew Tefferra, MD, Kimberly Carter, RN, Millicent Jenkins, RN, and Bernard Alenda, NP**

In a § 1983 action, liability is imposed on "any person who shall subject, or cause to be subjected, any person . . . to the deprivation of any rights. . . ." 42 U.S.C. § 1983. Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). The statute requires a showing of personal fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th. Cir. 1977); *Monell,* 436 U.S. at 690.

The Wexford Defendants argue that Hauth fails to attribute specific wrongdoing or improper care to any individual defendant in the body of the complaint sufficient to state a constitutional claim.[8] The Wexford defendants have also filed verified copies of 109 pages of Hauth's medical records with an affidavit executed by Kasahun Temesgen, M.D., who is a

---

[8]     The Wexford Defendants assert that there is no evidence that Millicent Jenkins, RN, Kimberly Carter, RN, or John Moss, PA treated Hauth during this period. Hauth counters that John Moss treated him for vertigo by prescribing meclizine. ECF No. 39-3 at pp. 1, 3. Hauth acknowledges that Carter and Jenkins did not treat him, but states that he had to deal with Carter concerning his ARP requests and Jenkins concerning his post-surgical follow-up visit. ECF No. 30-3 at p. 1. Assuming Hauth's assertions to be true, these allegations nevertheless fail to show that Jenkins, Moss, or Carter acted with requisite deliberate indifference to support an Eighth Amendment claim.

Wexford employee and Regional Medical Director for JCI. These documents are summarized as follows.

### a. Wexford Defendants' Exhibits

After Hauth reported right ear pain to medical providers at JCI in January of 2015, he was seen more than 24 times for complaints of ear pain and related dizziness and nausea. ECF Nos. 30-5 (Temesgen Affidavit), 30-4 (Medical Records). Hauth was initially seen by midlevel providers and, when his condition did not resolve, he was referred to physicians and scheduled for regular evaluations in the chronic care clinic. ECF No. 30-5. Hauth was treated with different medications including Ibuprofen, Cipro, Aprodine, Keflex, Antivert, Claritin, Ciprodex, Loratadine, Meclizine, Azithromycin, Augmentin, Debrox, Clarithromycin, Doxycycline, and Promethazine. *Id.* When his condition did not respond, his medications were modified. In May and July of 2015, Hauth was referred to Bon Secours Hospital and to Mercy Hospital for consultations with otolaryngologists (ear, nose and throat doctors or "ENTs").

Temesgen states that medical providers requested multiple consultations for Hauth's medical concerns. Consultation requests were submitted in April of 2016 for an ENT sinus surgery evaluation, on May 18, 2016, for post-surgery follow-up and in June of 2016 for a second post-surgery follow-up. *Id.* Medical providers requested a hearing test for Hauth in consult requests submitted in July and October of 2015, and in March and April of 2016. In June of 2016, consultations with a neurotologist[9] and an audiologist were requested for post-surgical follow-up. Consultation requests were placed for a CT scan in October 2015, in March 2016 for an ENT follow-up on the CT scan result, and on April 2016, for a CT scan in preparation for surgery. ECF Nos. 30-5; 30-4.

On July 15 2015, Dr. Anwar Mumaz, an otolaryngologist, examined Hauth at Bon

---

[9] Neurotology is a subspecialty of otolaryngology. A neurotologist is a board-certified otolaryngologist who provides medical and surgical care of patients with diseases that affect the ears, balance system, temporal bone, skull base, and related structures of the head and neck. http://www.entnet.org.

Secours Hospital.  *Id*; ECF No. 30-4 at pp. 27-31.  Mumaz diagnosed Hauth with dysfunction of his right Eustachian tube, sinusitis, a deviated septum, right ear hearing loss, and ear ache.  *Id*. at p. 24.  Mumaz recommended a CT scan of Hauth's sinuses and a hearing test with a four week follow-up.  *Id*.

Hauth's CT scan was performed on August 17, 2015.  ECF No. 30-4 at pp.  26-34.  The CT scan findings included "alveolar ridges [gums] . . . were "markedly atrophic with missing teeth.  There was no distinct evidence of a distinct defect in the maxillary sinuses [gum atrophy had no effect on the maxillary sinuses]" ECF No. 30-4 at p. 31; ECF No. 30-3 at p. 6.  The CT report "impression was chronic dental disease with multiple missing teeth.  There was no evidence of sinus disease."  *Id*.

On November 18, 2015, Zowie Barnes, M.D. saw Hauth.  Barnes resubmitted requests for an audiology consultation and for an ENT follow-up.  ECF No. 30-4 at p. 44.

On January 13, 2016, audiologist Dr. Ross Cushing performed a hearing test on Hauth, and determined he had severe mixed loss in the right ear and a slight sensorineural loss in the left ear.  Cushing recommended that Hauth been seen for follow-up with an ENT.  *Id*. at p. 45; ECF No. 30-5 at p. 4, ¶ 9.  Dr. Cushing did not recommend a hearing aid for Hauth at that time.  *Id*.  The ENT specialists who have since evaluated Hauth recommended that he be evaluated for a hearing aid.  *Id.*

On February 1, 2016, Hauth was seen at the ENT Clinic at Mercy Hospital by Ileana Showalter, M.D., an otolaryngologist.  Showalter recommended that Hauth receive a nasal endoscopy and indicated that she need to see his CT sinus scan and the hearing tests results at the follow-up examination.  She also prescribed medication and nasal spray for him.  ECF No. 30-4 at p. 52.  Hauth was seen the same day by Bernard Alenda, NP for a post-office site visit follow-up and he ordered the medications and nasal sprays Showalter had recommended.  *Id*. at p. 53.

On February 18, 2016, Dr. Getachew Tefferra saw Hauth for right ear pain. Tefferra noted Hauth's follow-up consultation had been generated and his CT scan and hearing test results would be sent with him to the appointment. *Id*. at p. 56.

On February 22, 2016, Dr. Showalter saw Hauth for follow-up. Although Hauth's hearing test was sent for her review, the CT scan results were not provided. *Id*. at pp. 58, 62. Showalter took a mucus culture from Hauth, indicated that Hauth was a candidate for sinus surgery and recommended a two-week follow-up with his CT scan results. *Id*. at pp. 59-61. She also noted that Hauth would benefit from an otology consultation for his right ear hearing loss. *Id*. Dr. Zowie Barnes saw Hauth later that day for a post-off site medical visit follow-up. *Id*. at p. 62.

On March 9, 2016, Mike Romain, PA saw Hauth for sinus pain. Romain prescribed antibiotics and indicated that he "will consult with MD per notes on chart dated 02/22. E-mail notification sent to offsite schedule to retrieve special notes." *Id*. at p. 63.

On March 16, 2016, Matthew Carpenter, PA. saw Hauth, noted the recommendations that were made by the ENT on February 22, 2016, and placed a consultation for an audiology evaluation and follow-up visit at Mercy.

On April 18, 2016, Brenda Taft-Hall, RNP saw Hauth to check on the status of his ENT consultation. She informed Hauth that a consultation request had been generated. *Id*. at p. 72.

On April 19, 2016, Darryl Hill, MD saw Hauth for complaints of ear pain, headaches, dizziness and a yellow nasal discharge. Hill noted that Hauth was waiting for an ENT evaluation. *Id*. at p. 74.

On April 22, 2016, Andrew Moultrie, M.D. requested a CT scan for Hauth in preparation for surgery. Moultrie requested the scan be performed as soon as possible. *Id*. at p. 76.

On April 26, 2016, Bolaji Onabajo, M.D. placed a consultation order for Hauth's surgery, which was scheduled for May 18, 2016. *Id*. at p. 78.

On May 13, 2016, Priscilla Momah, PA saw Hauth for a pre-operative evaluation. *Id*. at pp. 80-81.

On May 18, 2016, Hauth underwent sinus surgery for septoplasty/resection of his turbinates/balloon sinuplasty with fusion at Mercy Hospital on May 18, 2016. ECF No. 30-5 ¶8; ECF No. 30-4 at p. 84. Hauth was seen later that day by PA Momah for a post-operative evaluation. His discharge medications were listed as oxycodone, azithromycine, promethazine, and Sudafed. *Id*. at p. 85. Momah issued Hauth a pass for a cane for one year, feed in status until May 25, 2016, and a pass for narcotics until May 25, 2016. Momah also requested a post-operative follow-up appointment at Mercy Hospital for Hauth. *Id.* at p. 87.

On May 20, 2016, Hauth complained to Momah of constipation after two days of taking oxycodone. He was prescribed a laxative. *Id.* at 88. Hauth's medication records indicate he was provided oxycodone-acetaminophen on May 18, 2016 through May 25, 2016. *Id*. at p. 109.

On June 1, 2016, Hauth saw Titilayo Otunuga, NP, and informed him that he was to have nasal balloons and splints removed a week after surgery, but was still waiting. Hauth reported a yellow bloody discharge from his nose and abdominal discomfort. Hauth indicated that he had been prescribed Prilosec but "due to thing he read about it" he was not taking it and wanted an alternative medication prescribed. Otunuga prescribed Zantac instead and indicates that Hauth was scheduled for a post-operative appointment at Mercy Hospital on June 3, 2016. *Id.* at p. 92.

On June 3, 2016, Hauth was seen for a post-operative visit at Mercy Hospital. *Id*. at pp. 94-96. Hauth presented a mild case of cellulitis for which a course of ciprofloxacin was recommended. Hauth's splints and were removed. *Id*. Hauth asked the surgeon to recommend an audiology appointment for him for a possible hearing aid. *Id*. Later that day, Matthew

Carpenter, PA saw Hauth for a post off-site visit. Carpenter ordered ciprofloxacin and placed a consultation request for a follow-up visit.

On June 6, 2016, Priscilla Momah, PA-C saw Hauth and noted that his otology consultation request from April 26, 2016 was still pending. Momah prescribed Naproxin for Hauth after he indicated Tylenol #3 was not working. *Id*. at p. 95.

In his affidavit, Dr. Temesgen states that outside consultant recommendations are not immediately accepted as a necessary course of treatment, and the additional constraints of DPSCS custody considerations must also be considered. ECF No. 30-5. Temesgen states that it has not yet been determined whether Hauth's right ear condition warrants a hearing aid. *Id.* Of note, Hauth states in his opposition to the Wexford defendants' dispositive motion that Cushing gave him a hearing aid, although Hauth does not specify the date when the hearing aid was provided. ECF No. 39-5 at p. 1.

As to Hauth's assertion that it took almost a week for him to receive his post-operative pain medications, Temesgen states that when Hauth returned to JCI on May 18, 2016 after surgery, an order was placed for the medications recommended for him, including Percocet,[10] Azithromycine, Promethazine, and Sudafed the same day. He notes that Hauth complained two days post-surgery that taking oxycodone constipated him. ECF No. 30-4 at p. 5 ¶ 10.

Regarding Hauth's complaint that his follow-up visit to Mercy Hospital was nine days late, causing him an infection because stitches and splints were left in his nose for too long a time, Temesgen states that his follow-up visit was requested on May 18, 2016, and "[t]here is no indication that any of Plaintiff's health care providers were involved in choosing the June 3rd date." *Id*. at ¶ 11. Temesgen states that during the follow-up visit on June 3, 2016, a "mild incidence of cellulitis was noted which was treated with ciprofloxacin." Temesgen opines there

---

[10] Percocet contains a combination of acetaminophen and oxycodone. https://dailymed.nlm.nih.gov/dailymed/drug Info.

is no evidence that cellulitis developed because of the timing when it was evaluated. *Id.* Temesgen states Hauth will continue to be seen regularly for chronic care visits. *Id.*

Hauth fails to allege how any individual Wexford Defendants acted with requisite deliberate indifference to his serious medical needs, and provides no testimonial evidence to refute the Wexford Defendants' exhibits and affidavits. The unrefuted evidence shows that Hauth was treated by medical providers with medications and when his condition did not improve, he was referred to specialists including two otolaryngologists and an audiologist, provided two CT scans and a hearing test, and ultimately provided surgery at Mercy Hospital. Hauth was followed by medical providers at JCI and in a follow-up visit to the otolaryngologist at Mercy. Further, Hauth does not controvert the Wexford defendants' averments that they submitted multiple and timely requests for consultations and follow-up visits for him. The Wexford defendants acknowledge that Hauth's post-surgical follow-up visit was nine days later than recommended, but Hauth provides no evidence to suggest that the delay was the result of deliberate indifference on the part of any Wexford defendant. As noted by Dr. Temesgen, outside consultant recommendations are not immediately accepted as a necessary course of treatment, and additional constraints of DPSCS custody considerations must also be considered. ECF No. 30-5. Hauth does not refute that Defendants submitted multiple and timely requests for consultations and follow-up visits. Although Hauth may disagree with the course of treatment provided to him or the outcome of the treatment, he fails to allege or to provide facts to show that the Wexford Defendants acted with "subjective recklessness." *Farmer*, 511 U.S. at 839–40.

Hauth has been asked to rebut Defendants' affidavits and evidence with his own evidence to establish a genuine dispute of material fact as to whether any Wexford defendant acted with deliberate indifference to his serious medical needs. He has not done so. Even when the evidence is viewed in the light most favorable to Hauth and all inferences drawn in his favor,

there is no genuine issue of material fact whether the Wexford defendants acted with a culpable state of mind and denied him constitutionally sufficient treatment. Accordingly, they are entitled to summary judgment as a matter of law.

### B. DPSCS' Response

The DPSCS moves for dismissal or summary judgment in its favor and raises Eleventh Amendment immunity as an affirmative defense. ECF No. 37.

The Eleventh Amendment provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." In effect, the Eleventh Amendment bars suits for damages against a state in federal court unless the state has waived its sovereign immunity or Congress has abrogated its immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.").

DPSCS is a state agency. *See* Md. Code. Ann., Corr. Servs. § 1-101(f). The State of Maryland has not waived its sovereign immunity under the Eleventh Amendment to suit in federal court. The DPSCS, as an agency of the State of Maryland, is immune from suit under the Eleventh Amendment. Accordingly, DPSCS' motion to dismiss will be granted.[11]

---

[11]    In his opposition, (ECF No. 47) Hauth faults JCI wardens and assistant wardens as well as an administrator in the Inmate Grievance Office ("IGO") for the alleged failure to provide him adequate medical care. The IGO is not authorized to consider inmate grievances against the health contractor or its employees who provide medical and dental care to inmates. *See Adamson v. Correctional Medical Services, Inc.*, 359 Md. 238, 753 A.2d 501 (1999); *see also* ECF No. 47-6. In order to hold nonmedical supervisors liable for a § 1983 deliberate indifference claim, Hauth must to show that they (1) failed promptly to provide needed medical care; (2) "deliberately interfered with the prison doctors' performance"; or (3) "tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier*, 896 F.2d at 854. Generally, prison officials may rely on the health care providers' expertise. *Id.* Hauth provides no evidence administrators purposely hindered his access to medical or dental treatment or otherwise acted with requisite deliberate indifference to state an Eighth Amendment claim of denial of adequate medical care.

**C. Response filed by Mumby & Simmons, Dental Consultants, P.C, Hayden Patino, DDS, and Andrew Aziz, DDS**

Defendants Mumby & Simmons, Dental Consultants, P.C, Hayden Patino, DDS, and Andrew Aziz, DDS, move for dismissal on the ground that the complaint sets forth no allegations against them of wrongdoing. ECF Nos. 52, 57. Hauth names Mumby & Simmons as the "dental contractor," and makes no allegations in the complaint that Drs. Patino or Aziz were its employees or agents. ECF No. 1, ECF No. 1-1. In his response filed on January 3, 2017, Hauth asserts that "Dr. Cuffey was employed by Mumby & Simmons and they are the prime reason for all of this." ECF No. 54. Hauth's specific factual averments, however, are aimed only at Cuffey. *Id*. Furthermore, Mumby & Simmons argues that even if Cuffey were to be shown to have committed a constitutional violation, the doctrine of respondeat superior does not apply in a § 1983 action and Hauth does not allege a policy, practice, or custom caused a violation of his constitutional rights to premise supervisory liability. *See Monell*, 436 U.S. at 690. The court agrees, and will grant the motion to dismiss as to Mumby & Simmons.

Further, apart from identifying Aziz and Patino as dental providers who treated him, Hauth fails to attribute specific acts of wrongdoing to them in the complaint or allege facts to suggest they acted with deliberate indifference to his serious medical needs. Aziz states in his affidavit that on March 1, 2013, he examined Hauth for complaints of pain related to the February 18, 2013 extraction of tooth number 15.[12] ECF No. 52-2. Aziz observed Hauth presented with poor oral hygiene, the extraction site was irritated, and there was exposed bone on the distal portion on the next tooth, number 14. *Id*. Aziz determined the bone was exposed due to loss of the initial blood clot that was established after the February 18, 2013, extraction, and packed the site with paste and gel foam to stop bleeding and sutured the tissue closed. Aziz

---

[12] Hauth states the tooth was extracted on February 18, 2013, by Dr. Cuffey. ECF No. 1-1.

determined the loss of the postsurgical blood clot was more than likely caused by Hauth's noncompliance with postoperative instructions. ECF No. 52-2.

On March 4, 2013, Aziz saw Hauth for follow-up and noted the area around tooth number 15's extraction was healing. Aziz ordered a panoramic x-ray which revealed sinusitis, and he prescribed an antibiotic for Hauth. On March 6, 2013, Aziz saw Hauth and noted his poor hygiene. The extraction site showed slow healing. *Id.*

On March 8, 2013, Aziz examined Hauth for complaints of continuing pain. An x-ray showed periaical pathosis (infection at the base of the tooth root) at tooth number 14. *Id.* Aziz determined that a previous root canal had failed and recommended extracting tooth number 14. With Hauth's consent, Aziz extracted tooth number 14, dressed the extraction area, and gave Hauth postoperative instructions.

When Aziz saw Hauth for a follow-up visit on March 13, 2013, he observed poor hygiene but that the area around the extraction of tooth number 14 was healing well. Hauth described having "bubbles in his mouth while lifting weights," and Aziz recommended that he refrain from exertion or blowing his nose to avoid exacerbating his sinus issue. Aziz examined Hauth again on April 19, 2013, noting the extraction areas for tooth numbers 14 and 15 had healed well, and Hauth was asymptomatic. *Id.* at p. 3, ¶7; *see also* ECF No. 39-5 at p. 4. After that time, Aziz saw Hauth for dental exams and treatment, but these visits did not involve issues related to Hauth's dental visits between March 1, 2013 and April 19, 2013, or issues about sinus complaints which were being assessed by medical doctors. ECF No. 52-2 at p. 2, ¶8.

Hayden Patino, DDS states in his affidavit that the only time he examined or treated Hauth was April 3, 2013. ECF No. 52-3. On that day, Patino saw Hauth for a dental examination. Patino observed a bony spicule in the area of the extraction of tooth number 14, no sinus communication/exposure, and no infection and or pain. *Id.*

Hauth does not refute the information in Aziz and Patino's affidavits. Instead he faults Dr. Cuffey as "the one who pulled the tooth and punctured my sinus canal and caused all the trauma." ECF No. 54 at p. 2. Nowhere does Hauth particularize his claims against Aziz or Patino or assert facts sufficient to premise a claim of Eighth Amendment deliberate indifference. Deliberate indifference is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that might constitute medical malpractice do not constitute deliberate indifference. *See Lightsey,* 775 F.3d 178 (quoting *Estelle*, 429 U.S. at 106). It is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction. *Farmer*, 511 U.S. at 837–39; *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 208). It is this exacting standard that Hauth's allegations fail to meet. Thus, even when the facts are viewed in the light most favorable to Hauth, there is no genuine issue of material fact in dispute to premise a claim of deliberate indifference to his serious medical or dental needs. Accordingly, Patino and Aziz are entitled to summary judgment in their favor as a matter of law.

### D. Response of Correctional Dental Associates, PA

Correctional Dental Associates ("CDA") accurately notes that apart from naming it as a defendant in this proceeding, Hauth does not allege that it committed any wrongdoing. CDA observes that Hauth's specific dental claim involves Dr. Cuffey, and "CDA had no contact or interaction with Plaintiff . . . ." ECF No. 59-2 ¶8. (Decl. of Leslie A. Haying, Jr. DDS, Director and President of CDA). CDA is a New Jersey Professional Corporation which provides dental services to DPSCS inmates, and contracted with Mumby & Simmons Dental Consultants in agreements entered in 2010 and 2014, the latter of which is currently in effect. Pursuant to the agreement, Mumby & Simmons is an independent contractor. No employer-employee or

principal-agent is created, and CDA does not exercise control over the manner in which Mumby & Simmons or its employees or agents provide services to Hauth. *Id*. at ¶¶ 6-7; *see also* ECF Nos. 59-3, 59-4 (subcontractor agreements).

In the absence of specific allegations of wrongdoing against CDA, Defendant CDA's motion to dismiss will be granted.

### E.  Dr. Cuffey's Response

Dr. Floretta Cuffey, DDS moves to dismiss the claims against her or for summary judgment in her favor, asserting that the complaint fails to allege facts sufficient to support a claim pursuant to 42 U.S.C. § 1983.  Cuffey argues that the claims against her are barred by the applicable statute of limitations and lack of administrative exhaustion as affirmative defenses.

Hauth's claims against Cuffey arise from the care she provided on February 18, 2013. Hauth claims that during the tooth extraction, Cuffey ruptured his sinus canal, causing him associated sinus and ear problems.  ECF No. 1-1 at p. 1.  In his court-ordered supplement to clarify his claims against the dental providers, Hauth claimed that Cuffey punctured his sinus canal when she pulled his tooth and "broke the root of the good tooth next to it," causing him to lose that tooth as well.  ECF No. 23.  He faults Cuffey as "the one who pulled the tooth and punctured my sinus canal and caused all the trauma."  ECF No. 54 at p. 2.  In his opposition to Cuffey's dispositive motion, Hauth recites that Cuffey "punctured my sinus canal on tooth # 15 and because [she] was prying on tooth # 14 in order to remove tooth #15, she broke the root below the gum line that is why that tooth was in pain afterward. . . ."  ECF No. 64 at p. 1.  Hauth states that there was nothing wrong with tooth #14 before that visit.  *Id*.[13]

---

[13]     Hauth alleges that he was told that in order to continue to receive treatment he needed to "sign off on [the] ARP."  ECF No. 64 at p. 2.  He does not state the name of the person or persons.

On March 15, 2013, Hauth filed ARP JCI-590-13 complaining that Cuffey had broken his tooth and had to pry the root "causing a lot of trauma" to his mouth. ECF No. 39-6 at p. 1. Hauth alleged:

> [Dr. Cuffey] ruptured the sinus canal. I was blowing blood clots out of my nose for at least four days after. I had cuts around my mouth from her prying. I had constant pain afterward and the tooth in front of it was in pain. I gave it ample time to heal and it was still in pain and messed up. . . . There is still a hole from my sinus canal to my gum. When I blow nose bubbles out of my gum and my sinus seems infected. I saw Dr. Aziz [sic] on 3-3-13 about that and he said there is still a hole there. I've been on 3 scripts of antibiotics [,] one double dose[,] and several scripts of Motrin. I do not want Dr. Cuffey to ever touch my mouth again.

*Id*. at pp. 1-2.

On April 10, 2013, William Mumby, DDS submitted an ARP case summary outlining his investigation of the ARP. Mumby's investigation included reviewing Hauth's dental records from 2008 to March 20, 2013. ECF No. 56-5. Mumby observed too that Hauth had consented to the extraction and had acknowledged his understanding of "all possible squalene" including pain, swelling infection, sinus involvements, pieces of residue bone or tooth fragments, and the possibility of additional surgery. *Id*. at p. 2. Mumby concluded that Hauth received appropriate and timely treatment and care which comported with his clinical presentation, and recommended dismissing the ARP for lack of merit. *Id*. On April 19, 2013, Hauth withdrew the ARP. ECF No. 56-6. Hauth filed this § 1983 action on May 19, 2016.

Because no federal statute of limitations governs § 1983 cases, federal courts routinely measure the timeliness of federal civil rights suits by state law. *See Burnett v. Grattan*, 468 U.S. 42, 49 (1984); *Chardon v. Fumero Soto*, 462 U.S. 650, 655–56 (1983); *Johnson v. Ry. Express Agency, Inc*., 421 U.S. 454, 464 (1975). Maryland's general three-year statute of limitations for civil actions is most applicable to Hauth's claims. *See* Md. Code, Cts. & Jud. Proc. § 5–101. Federal law governs the question of when a cause of action accrues under § 1983. *See Wallace*

*v. Kato*, 549 U.S. 384, 387 (2007). Typically, the running of the statute of limitations begins when a plaintiff knows or has reason to know of his injury. *Id*. Hauth's pleadings are unclear as to when he knew or had reason to know of his injury, as he appears to base his claim of inadequate treatment on the lengthy process of medical care. ECF No. 1. Accordingly, the court will not dismiss this claim as barred under the applicable statute of limitations.

In *Adamson v. Correctional Medical Services, Inc*., 359 Md. 238, 753 A.2d 501 (Md. 2000), the Court of Appeals of Maryland examined the legislative history of the Maryland Administrative Remedy Procedure ("ARP") grievance process and observed that it permitted a prisoner to submit a complaint for grievances against officials or employees of the Maryland Division of Correction and Patuxent Institution through to the IGO. The state appellate court further noted that the IGO declines to hear prisoner grievances against private health care contractors. *Adamson*, 359 Md. 266–271. The Court of Appeals concluded that the Maryland prisoner administrative remedy process does not encompass complaints against private medical providers under contract with the state. This court adopted the *Adamson* analysis and found that administrative exhaustion may not be raised as an affirmative defense by healthcare providers at DPSCS facilities. *See e.g. Shannon v. Nero,* 2013 WL 500704 (D. Md. February 8, 2013); *Shipe v. Mumby and Simmons,* 2012 WL 5417332 (D. Md. November 5, 2012); *Chisum v. Maryland*, 2010 WL 481350 (D. Md. February 5, 2010); *Calhoun v. Horning, et al*., 2009 WL 2913418 (D. Md. September 2, 2009). Hauth was not required to use the ARP process regarding his dental claims and Defendants' argument in favor of dismissal for nonexhaustion is unavailing.

Next, the court turns to Cuffey's argument that the complaint fails to allege facts sufficient to support a claim pursuant to 42 U.S.C. § 1983. Dr. Cuffey does not dispute that Hauth's allegations concern a serious medical problem. ECF No. 56-1 at p. 5. Rather, Cuffey argues that Hauth fails to satisfy the subjective component required to state a constitutional claim

of deliberate indifference. Specifically, Hauth does not claim or allege facts to establish that Cuffey had actual subjective knowledge of an excessive risk her actions posed him and proceeded nevertheless to perform the extraction with reckless regard to his health. The court agrees.

Even when the facts are viewed in the light most favorable to Hauth, there is no genuine issue of material fact in dispute that would establish that Cuffey's extraction of the tooth was so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness to meet the exacting standard of deliberate indifference necessary to establish an either amendment claim, *see Miltier*, 896 F.2d at 851, to satisfy the "exacting" standard," *Lightsey*, 775 F.3d at 178, required to establish an Eighth Amendment claim. Accordingly, Dr. Cuffey is entitled to summary judgment in her favor as a matter of law

## CONCLUSION

For these reasons, the Wexford Defendants' motion to dismiss, or in the alternative, motion for summary judgment (ECF No. 30) will be granted. The claims against Wexford Health Sources, Inc. will be dismissed with prejudice. Summary judgment will be granted in favor of John Moss, PA, Emmanuel Esianor, PA, Matthew Carpenter, PA, Priscilla Momoh, PA, Titilayo Otunuga, PA, Oladipo Olaleye, PA, Mary Rockefeller, PA, Zowie Sheena Barnes, MD, Bolaji Onabajo, MD, Darryl Hill, MD, Gatachew Tefferra, MD, Kimberly Carter, RN, Millicent Jenkins, RN, and Bernard Alenda, NP. Defendants Mumby & Simmons Dental Consultants, P.C., Hayden Patino, D.D.S., and Andrew Aziz, D.D.S.'s motion to dismiss or, in the alternative, for summary judgment (ECF No. 52) will be granted. The claims against Mumby & Simmons will be dismissed. Summary judgment will be granted in favor of Drs. Aziz and Dr. Patino. Correctional Dental Associates' motion to dismiss or, in the alternative, motion for summary judgment (ECF No. 59), will be granted and the claims against it dismissed with prejudice. Dr.

Floretta Cuffey's motion to dismiss or in the alternative, motion for summary judgment (ECF No. 56), treated as a motion for summary judgment, will be granted and judgment will be entered in her favor.  A separate Order follows.

April 14, 2017                                    _____/s/_____
                                                  DEBORAH K. CHASANOW
                                                  United States District Judge